THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KATHRYN NARCISI

v.

TURTLEBOY DIGITAL MARKETING,
LLC D/B/A TURTLEBOYSPORTS.COM

C.A. No. 2019-cv-00329-JJM-PAS

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendant Worcester Digital Marketing LLC, formerly known as Turtleboy Digital Marketing LLC, by its attorney, submits the within memorandum of law in support of its Motion to Dismiss the Complaint for (a) lack of personal jurisdiction and (b) insufficient service of process. In support of the motion, Defendant relies upon the Declaration of Aidan Kearney filed herewith.

**Proceedings in State Court**

This action was commenced by the Plaintiff, Kathryn Narcisi, in the Superior Court of the State of Rhode Island, Washington County, on May 13, 2019. Initially, Plaintiff was represented by counsel, who was granted leave to withdraw on May 31, 2019.

The complaint of the Plaintiff (ECF 1-1) provides a bare bones description of the parties. It states that Plaintiff is a resident of Rhode Island, and that Defendant "is a corporation with a principle place of business located in the City of Worcester, Commonwealth of Massachusetts." (ECF 1-1 ¶¶3-4) Plaintiff is described as a Rhode Island business owner. (¶5) The complaint alleges that Defendant injured Plaintiff by its placements of comment about Plaintiff's person and business on the internet (¶7) and that as a result Plaintiff thereafter received messages and

1

communications from followers of the Defendant's website (¶¶9-13). Plaintiff acknowledges that no communication occurred with Defendant (¶8).

The complaint contains no allegation, conclusory or otherwise, that Defendant has availed itself or is subject to the jurisdiction of the state of Rhode Island.

On May 16, 2019, Plaintiff filed a perfunctory motion for and secured an *ex parte* temporary restraining order ("TRO") from a justice of the Superior Court. (ECF 1-3; 1-4) The TRO broadly restrained Defendant from:

> contacting, assaulting, molesting, stalking, cyber stalking, cyber bullying, bullying, harassing, threatening, annoying, slandering or otherwise interfering with Plaintiff at home, at work, through third parties, on the street, or elsewhere. The Defendant shall immediately remove any and all posts, blogs, and comments regarding the Plaintiff, either by her name, Kathryn Narcisi, or the pseudonym "Failure Swift", be immediately removed from the Defendant's website and all other sites associated with the same.
> (ECF 1-4)

The TRO contained no findings of fact or conclusions of law. Neither the motion nor the TRO recited grounds for a determination of irreparable harm or for excusing complete lack of notice to the adverse party. The TRO did not specify how long it would remain in effect.[1]

---

[1] Defendant respectfully submits that the TRO was invalid from the outset on a host of substantive grounds (including absence of personal jurisdiction and prior restraint in violation of the First Amendment to the United States Constitution) and procedural grounds. For example, Rule 65(b) of the Superior Court Rules of Civil Procedure permits the issuance of an *ex parte* temporary restraining order without written or oral notice to the adverse party only (1) upon a showing of immediate and irreparable injury that will result before the adverse party can be notified and (2) upon a written certification of the efforts made to give notice to the adverse party "and the reasons supporting the claim that notice should not be required." No such representations appear in the record of the Superior Court in this matter.

In any event, Defendant submits that the TRO under any circumstances is not effective at this time. Under RCP 65(b), a temporary restraining order "shall expire by its terms…not to exceed ten (10) days" with the possibility of an additional ten days "for good cause shown" with the reasons for extension entered of record. Whether the Superior Court considered a 10-day extension appropriate is unclear–since no formal extension appears in the record and Defendant had not appeared–it appears that, at maximum, the TRO expired no later than June 5, 2019.

The matter was continued for hearing on preliminary injunction first to May 24, 2019, then to May 31, 2019, and finally to June 19, 2019. No further orders concerning the TRO were entered. The matter was removed to this Court on June 18, 2019.

**Facts Material to the Motion to Dismiss**

Defendant Worcester Digital Marketing LLC is a limited liability company organized in and under the laws of the Commonwealth of Massachusetts with its principal and sole place of business in Worcester, Massachusetts. Defendant is owned and operated by Aidan Kearney, whose declaration ("Kearney"), submitted herewith, provides the factual basis for the within motion. Besides Kearney, a Massachusetts resident, Defendant has no other managers, officers or employees. Defendant has no presence in the State of Rhode Island: it has no offices, employees, property or addresses in Rhode Island. It contracts no business with Rhode Island residents or businesses. Its revenue is internet-based; it derives no revenue identifiable to or targeted to Rhode Island. It pays no taxes in Rhode Island. It is not registered to do business in Rhode Island. (Kearney ¶¶1-10; Ex. 1, 3)

Defendant was formerly called Turtleboy Digital Marketing LLC, with a name change to Worcester Digital Marketing LLC in 2016. Defendant maintains websites called "turtleboysports.com" and "TBDailyNews.com." According to its 2014 Certificate of Organization, Defendant "is a blogging website that will raise revenue through selling ad space and possibly merchandise." (Kearney Ex. 1) Among other things, Defendant collects and comments on matters of public interest and conducts investigative journalism.[2] (Kearney ¶¶1, 11-14)

---

[2] Defendant has used its website to expose corruption in the Massachusetts State Police. A February 18, 2018 Boston Globe editorial credited Turtleboysports.com for breaking two stories which led to the shakeup and departure of high-ranking members of the Massachusetts State

3

Defendant's business is exclusively internet-based. Its revenue is derived from placement of advertisements and internet sales of products offered on the internet. Defendant uses an ad network which manages both ad placement and revenue. It also offers a subscription for ad-free content. None of its ads or promotions target Rhode Island or are directed to a specific geographical community. (Kearney ¶¶15-16)

Defendant decided to write about Plaintiff after Plaintiff's own internet postings came to its attention. Plaintiff had posted a video describing her treatment at a hospital, which she considered unacceptable. Plaintiff had urged her viewers to share her video to expand the coverage. Defendant decided to post the video, as well as selections from the extensive personal and business postings that Plaintiff had placed on the internet and Facebook, to illustrate its blog commentary about Plaintiff, taking a mocking and unflattering view of Plaintiff's internet publications and motivations. Plaintiff's internet presence, not her home state, was the focus of Defendant's commentary and blog. (Kearney ¶¶17-18)

Defendant's blog permits internet comments and reactions. In its blog, Defendant did not invite, request or otherwise suggest that its readers communicate with Plaintiff. Defendant had no communications with Plaintiff, directly or through her then-counsel, at any time prior to learning of the issuance of the TRO. (Kearney ¶¶19-21)

Kearney is the resident agent for Defendant. On May 22, 2019, Kearney was hand-delivered a group of papers consisting of the following: the Superior Court complaint (ECF 1-1), the motion for temporary restraining order (ECF 1-3), the TRO issued on May 16, 2019 (ECF 1-4), a subpoena directing Defendant to appear at court on May 24, 2019 at 9:30 am (Kearney Ex.

---

Police. Source, accessed 6/19/19: https://www.bostonglobe.com/opinion/editorials/2018/02/28/where-accountability-state-police/IZ0y2DRwGUPs5XNsoGuMoK/story.html.

2), and the "Business Entity Summary" of the Commonwealth showing the Defendant's correct name and address (Kearney Ex. 3). Kearney was not provided any document purporting to be a summons. Kearney was not tendered a witness or mileage fee. (Kearney ¶¶22-23) No return of service has been filed in the Superior Court. (Kearney ¶ 27, Ex. 4)

After Kearney received the subpoena on May 22, 2019, for a court appearance on May 24, 2019, he reached out to Plaintiff's then-attorney, who agreed to reschedule the matter to May 31, 2019. Kearney, a non-lawyer, came to the Superior Court on May 31, 2019, without counsel and was advised that he could not speak for Defendant. The matter was heard only on the motion of Plaintiff's counsel to withdraw, which was granted. Hearing on preliminary injunction was continued to June 19, 2019, to allow both parties time to obtain counsel. Defendant then reached out to the American Civil Liberties Union of Rhode Island, which agreed to provide assistance. The case was removed to this Court on June 18, 2019, based on diversity of citizenship. (Kearney 24-27)

**The Complaint Must Be Dismissed Due to Lack of Personal Jurisdiction**

Rhode Island's "long-arm" statute, R.I.G.L.§9-5-33(a), exercises jurisdiction over foreign corporations, nonresident individuals, partnerships and associations that "have the necessary minimum contacts with the state" provided that such exercise is "not contrary to the provisions of the constitution or laws of the United States." *See e.g., Cassidy v. Longquist Management Co., LLC,* 920 A.2d 228 (R.I. 2007). It is Plaintiff's burden to demonstrate *in personam* jurisdiction of the Defendant. *See, e.g., Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,* 290 F.3d 42, 50 (1st Cir. 2002); *Cassidy,* 920 A.2d at 232.

There are two types of personal jurisdiction: "general jurisdiction, which requires that the defendant have continuous and systematic contacts with the state, and specific jurisdiction, where

5

the claim must be related to the defendant's contacts." *Phillips v. Prairie Eye Center,* 530 F.3d 22, 26 (1st Cir. 2008), *cert. denied,* 555 U.S. 1140, *citing Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir.2005).

Plaintiff has made no effort in her complaint to acknowledge, let alone address, the issue of *in personam* jurisdiction, and, in the absence of any attempt to demonstrate such basis, Defendant respectfully submits that its motion to dismiss should be summarily granted, since the burden is on Plaintiff to do so.

Without assuming that burden, Defendant respectfully submits that the facts adduced in the Kearney Declaration demonstrate that the Court lacks jurisdiction over this Defendant under either "general" or "claim-specific" analysis.

General, or "all-purpose" jurisdiction requires affiliations with the forum state "so substantial that it is 'comparable to a domestic enterprise in that State.' *Daimler [AG v. Bauman],* 134 S.Ct. at 758 n.11." *Kuan Cheng v. United States Sports Academy, Inc.,* 2019 WL 1207863, *6 (D.Mass. 2019).

> Accordingly, the inquiry under *Goodyear* [*Dunlop v. Brown,* 564 U.S. 915 (2011)] is not whether a foreign corporation's in-forum contacts can be said to be in some sense "continuous and systematic," it is whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." 564 U.S., at ——, 131 S.Ct., at 2851.
> *Daimler AG v. Bauman,* 571 U.S. 117, 138-139 (2014)(footnote omitted).

In contrast to the stringent requirements for general jurisdiction, Defendant has no presence in Rhode Island.

Claim-specific jurisdiction focuses on the relationship between a defendant's contacts with the forum and the specific claim.

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the

6

forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable. *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007) (*quoting Daynard*, 290 F.3d at 60), *quoted in Phillips v. Prairie Eye,* 530 F.3d at 27.

The claim-specific analysis fails. Defendant conducted no activity in the forum state with respect to the matters at issue; all of its conduct occurred online. Any in-state contacts between Plaintiff and third persons cannot provide a bootstrap to draw Defendant to the forum state. As the First Circuit observed in *Phillips, supra* 530 F.3d at 28, "[t]he contacts must be deliberate, and not based on the unilateral actions of another party." (Internal quotations, citations omitted.) Indeed, in *Phillips,* the First Circuit held that defendant's contacts with the forum state—mailing an employment contract and sending three emails to plaintiff in the forum state–although "plainly voluntary" and related to the claim–were nonetheless insufficient to establish "purposeful availment" of the forum to support personal jurisdiction. 530 F.3d at 28-29 (footnote omitted).

In *Kuan Cheng v. United States Sports Academy, Inc., supra,* the District of Massachusetts recently rejected the exercise of personal jurisdiction over an online educational program located in Alabama, despite evidence, not present here, of direct contacts between plaintiff and defendant in the forum state. There, while residing in the forum state, the plaintiff had direct contacts with the online program, including re-enrolling in the program, email communications and financial transactions, all of which related to the suit claiming that defendant engaged in unfair and deceptive business practices. Here, in contrast, Defendant has had no communication with Plaintiff, and its challenged actions occurred exclusively online with no geographical frame of reference. After collecting case law, the court there concluded that defendant's online presence, notwithstanding enrolling the plaintiff while a forum resident, was not sufficient to meet the requirements for specific jurisdiction. The court observed that the relationship between the defendant and the forum

7

state occurred "only be [*sic*] virtue of [plaintiff's] unilateral act of moving there." *Kuan Cheng, supra* at *8 (citations omitted).

In *Broadvoice, Inc. v. TP Innovations LLC,* 733 F.Supp.2d 219 (D.Mass. 2010), the court concluded that it lacked *in personam* jurisdiction over a nonresident defendant who had created a website (www.bewareofbroadvoice.com) devoted to attacking plaintiff-officers of a business and the business itself. On the website, defendant, a former customer of the plaintiff telephone provider, posted complaints and created a "public forum" encouraging readers to share their own stories and to file their own complaints with government agencies. After reviewing case law on internet activity, the court concluded that defendant's website did not satisfy the "purposeful availment" component of the specific-claim jurisdiction test, observing that the "defamatory website was aimed at Massachusetts only in the sense that it could be accessed by Massachusetts residents (along with the rest of the world). [Defendant] did nothing to incite residents of Massachusetts—as opposed to the world at large—to take up arms against Broadvoice. Nor do [plaintiffs] even allege that [defendant] intended that 'the brunt of the harm' be felt in Massachusetts. [*Calder v. Jones*, 465 U.S. 783] at 789–790, 104 S.Ct. 1482." *Broadvoice,* 733 F.Supp.2d at 226.

Persuaded by *Broadvoice* and other cases nationwide, the California Appellate Court in *Burdick v. Superior Court,* 183 Cal.Rptr.3d 1, 12 (Cal.App.4th 2015), held that "merely posting on the internet negative comments about the plaintiff and knowing the plaintiff is in the forum state are insufficient to create minimum contacts" to exercise personal jurisdiction over the nonresident defendant in a defamation case. The court, after reviewing recent decisions in this developing area of law, concluded that plaintiff must show more than the fact that plaintiff lived

in California, such as that "the allegedly defamatory posting was expressly aimed or intentionally targeted at California, …[or] had a California audience." *Id.* at 13.

The same applies here. The fact that Plaintiff lives in Rhode Island is the only connection to the forum state. Plaintiff herself established an extensive and multi-faceted internet presence, with both personal and business/marketing postings. Defendant's postings about Plaintiff also appeared only in this "virtual" location. Neither the postings nor Defendant's use of the internet to communicate were focused on Rhode Island.

Accordingly, the court lacks *in personam* jurisdiction over the Defendant and the motion to dismiss should be granted.

**The Complaint Must Be Dismissed Due to Insufficient Service of Process**

Defendant also submits that the complaint must be dismissed due to insufficient service of process.[3] This action was commenced in the Superior Court of the State of Rhode Island. Under the Rules of Civil Procedure of the Superior Court, a summons shall issue from the Clerk. RCP 4. Rule 4(e) requires that the summons, complaint and Language Assistance Notice "shall be served together."

Rule 4(c) of the Federal Rules of Civil Procedure likewise requires that "[a] summons must be served with a copy of the complaint."

No summons appears to have been issued by the Superior Court. (Kearney Ex. 4) None has been served upon the Defendant. (Kearney ¶23)

---

[3] The Court need not reach this issue in the event the motion is granted for lack of personal jurisdiction. The argument is made to preserve the issue and to ensure that, if the Court declines to dismiss the matter outright due to absence of personal jurisdiction, the Plaintiff will nonetheless be required to perfect service and accord Defendant the time to answer or otherwise respond as provided by the Rules.

9

If the Court reaches this issue, *see* n. 3 *supra,* the complaint should be dismissed with conditions requiring Plaintiff to perfect service before Defendant is required to answer or otherwise respond to the complaint.

**Conclusion**

For all of the above reasons, Defendant respectfully prays that its Motion to Dismiss is granted in all respects.

Respectfully submitted

 /s/ Lynette Labinger
Lynette Labinger #1645
128 Dorrance Street, Box 710
Providence, RI 02903
401-465-9565
ll@labingerlaw.com
Cooperating counsel,
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF RHODE ISLAND

**CERTIFICATION**

I hereby certify that on June 24, 2019, a true copy of this document was delivered electronically using the CM/ECF system to all counsel of record and a copy provided by mail to Kathryn Narcisi, 349 Tomaquag Road, Hopkinton, RI 02804.

 /s/ Lynette Labinger