### THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF RHODE ISLAND

KATHRYN NARCISI

v.

TURTLEBOY DIGITAL MARKETING,
LLC D/B/A TURTLEBOYSPORTS.COM

C.A. No. 19-cv-00329-JJM-PAS

### MEMORANDUM OF LAW IN SUPPORT OF
### OBJECTION OF DEFENDANT TO PLAINTIFF'S MOTION TO REMAND

Defendant Worcester Digital Marketing LLC, formerly known as Turtleboy Digital Marketing LLC ("Defendant"), by its attorney, hereby objects to Plaintiff's Motion to Remand the action to the Superior Court of the State of Rhode Island.

### Prior Proceedings

Plaintiff filed the underlying action in the Superior Court of the State of Rhode Island, Washington County, on May 13, 2019.  Plaintiff was represented by legal counsel.  She sought and thereafter obtained an ex parte temporary restraining order against the Defendant on May 16, 2019.

In her complaint (ECF 1-1), Plaintiff identified one cause of action by name—"libel" — and styled her complaint as presented in two separate claims for relief, Count I ("libel") for "damages, including reasonable attorney's fees," and Count III ("injunctive relief")[1] seeking a permanent injunction restraining and enjoining Defendant "from contacting, assaulting, molesting, stalking, cyber stalking, cyber bullying, bullying, harassing, threatening, annoying, slandering or otherwise interfering with plaintiff at home, at work, through third parties, on the street, or

---

[1]     There is no Count II.

1

elsewhere. The plaintiff demands that any and all posts, blogs, and comments following the same be immediately removed from the defendant's website and all other sites associated with the same."

In the "Statement of the Facts," Plaintiff alleged that she "is a business owner operating two businesses over the internet" (¶5) and has both personal and business placements on a variety of internet platforms, including "Facebook, Twitter, and Instagram, which has thousands of followers." (¶6)  Plaintiff alleged that Defendant posted a blog "which defamed and discredited the Plaintiff and her business entities" (¶7), and that, as a result of the blog, Plaintiff received hundreds of unwanted messages by email, social media, and cell phone from Defendant's "followers" (¶¶8-12), that the messages "are intended to annoy, harass, libel and defame the Plaintiff" (¶13), that the communications include "hostile, demanding, threatening, harassing, and even death related" messages (¶16), and have placed Plaintiff "in constant fear for her safety and for the safety of her husband and family" "at work, home, and all public places" (¶15), causing Plaintiff to suffer "extreme distress in both her work and home life." (¶17)  Plaintiff alleged that the blogs by Defendant "are libelous on their face.  It clearly exposes Plaintiff to hatred, contempt, ridicule and obloquy because it deals with matters that allow libel *per se* recovery." (¶21)  Plaintiff alleged that "[t]he blogs were seen and read…both here in Rhode Island and all over the world." (¶22)  Plaintiff alleged that, "[a]s a proximate result of the above-described publication, Plaintiff has suffered loss of her reputation, shame, mortification, and injury to her feelings, all to her damages in a total amount to be established by proof at trial." (¶23)

Thus, Plaintiff sought damages in an unspecified amount and attorneys' fees, as well as permanent injunctive relief requiring Defendant, among other things, to remove all posts from any website and to refrain from slandering or commenting about Plaintiff in perpetuity.

On June 18, 2019, Defendant removed the case to this Court based on diversity of citizenship.  (ECF 1)  An amended Notice, clarifying the basis for diversity of citizenship, was allowed.  (ECF 9)

Subject matter jurisdiction based on diversity of citizenship, 28 U.S.C. §1332, has two components:  1) that Plaintiff and Defendant be citizens of different states; and 2) that the amount in controversy exceed $75,000.00, exclusive of interest and costs.  In order to remove based on diversity, the removing defendant must be a non-citizen of the forum state.  28 U.S.C. §1441(b)(2).

Plaintiff now moves for an order remanding the matter to the state court on the basis that the Court lacks subject matter jurisdiction.  Plaintiff concedes that the parties' citizenship is diverse and has limited her motion to the contention that the matter in controversy does not exceed $75,000.00 and therefore fails to meet the jurisdictional threshold.  In support of her Motion, Plaintiff has filed the affidavit of her attorney, executed on September 10, 2019 (ECF 13-1, page 7), stating that Plaintiff "seeks no more than Seventy-Five Thousand and 00/100 ($75,000.00) Dollars in damages including reasonable attorney's fees and costs and intends to be bound by this admission in any subsequent litigation in State or Federal Court.  Furthermore, Plaintiff is not seeking punitive or exemplary damages."

### Applicable Legal Standards

As the party asserting federal court jurisdiction, Defendant bears the burden of demonstrating by a preponderance of the evidence[2] that the amount in controversy exceeds

---

[2]   "Under the preponderance standard, '[t]he jurisdictional fact ... is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are....' *Kopp [v. Kopp]*, 280 F.3d [883] at 885 [8th Cir. 2002]) (emphasis supplied)." *Bell v. Hershey Co.,* 557 F.3d 953, 959 (8th Cir. 2009),

$75,000.00, exclusive of interest and costs.[3]  *See, e.g., Hacker v. Aetna Life Insurance Company,* 2019 WL 638369 (E.D.Ky.2019); *Laccinole v. Whitepages, Inc.,* 2017 WL 933061 (D.R.I. 2017) (Smith, C.J.); 28 U.S.C. §1446(c).  However, "a removing defendant need not 'research, state and prove the plaintiff's claim for damages'" in order to meet this burden.  *Hacker,* at *2, *quoting Hayes v. Equitable Energy Resources Co.,* 266 F.3d 560, 571 (6th Cir. 2001).[4]  Where, as here, the state court complaint does not contain a specific *ad damnum* or calculation of losses, the court "'may look to the notice of removal and any other materials submitted by the parties.'  *Hogan* [*v. Wal-Mart Stores E., L.P*]*.,* 2014 WL 66658, at *3 [(D.R.I. 2014)]."  *Laccinole,,* at *2.

> In making the determination, this Court must adhere to the following additional considerations articulated by the First Circuit: first, if the jurisdictional amount is not facially apparent from the complaint, the court may look to the notice of removal and any other materials submitted by the parties; second, a court may consider which party has better access to the relevant information; third, the court's analysis of the amount in controversy focuses on the time of removal; and fourth, this preliminary determination concerning whether a defendant has met its burden should be done quickly, without an extensive fact-finding inquiry. *Amoche,* 556 F.3d at 48; *Spielman,* 251 F.3d at 4; *Toro v. CSX Intermodal Terminals, Inc.,* No. 12–40115–TSH, 2013 WL 593947, at *4 (D.Mass. Feb. 14, 2013); *Reynolds v. World Courier Ground, Inc.,* 272 F.R.D. 284, 286 (D.Mass.2011).
> *Hogan v. Wal-Mart Stores E., L.P.*, 2014 WL 66658, at *3 (D.R.I. 2014)(Sullivan, M.J.)

---

[3]    Where recoverable, both punitive damages and attorneys' fees should be included in the calculation.  14C Federal Practice & Procedure Jurisdiction §3725 (Wright & Miller) (4th ed. 2019).  In the argument which follows, Defendant has not included an amount for either punitive damages or attorneys' fees in support of its argument that the jurisdictional threshold has been met.

[4]    In *Pazol v. Tough Mudder, Inc.,* 819 F.3d 548 (1st Cir. 2016), cited by Plaintiff (ECF 13-1 at 4), the First Circuit observed that, in that case, the defendant had greater access to, but did not present, the information to calculate whether the $5 million minimum amount in controversy had been met.  There, the matter at issue concerned a classwide challenge to a race organized by the defendant.  That is not the case here.  At this early stage, Defendant has no access to Plaintiff's business books and records or to the basis for her claimed personal losses.  Instead of providing any information to support a claim that the amount in controversy does not exceed $75,000.00, Plaintiff has rested on her attorney's statement that she will be bound to a $75,000.00 cap on recoverable damages and attorneys' fees, and her argument that the permanent injunction that she seeks has a value of $0.00.

While the party opposing removal may bring forward evidence that the amount in controversy does not exceed $75,000.00, a post-removal stipulation that the party agrees to limit its recovery to no more than $75,000.00 is not the equivalent of a *clarification* that the state court matter never sought more, or was never worth more, than $75,000.00; it is effectively an amendment to the original complaint purporting to limit the amount in controversy to defeat removal. Such a stipulation will not defeat removal, if the amount in controversy was otherwise satisfied at the time of removal.

> If the plaintiff could, no matter how bona fide his original claim in the state court, reduce the amount of his demand to defeat federal jurisdiction the defendant's supposed statutory right of removal would be subject to the plaintiff's caprice. The claim, whether well or ill founded in fact, fixes the right of the defendant to remove, and the plaintiff ought not to be able to defeat that right and bring the cause back to the state court at his election. If he does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.
>
> *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938) (footnote omitted).

Nor does the fact that Rhode Island practice prevents the inclusion of a specific *ad damnum* alter this analysis. If the Plaintiff wished to prevent removal, she could have filed a declaration with her original State court complaint agreeing to be bound to a recovery of no more than $75,000.00, exclusive of interest and costs. Once the matter has been removed, "it is too late to do so":

> In order to ensure that any attempt to remove would have been unsuccessful, Bell could have included a binding stipulation with his [state court complaint] petition stating that he would not seek damages greater than the jurisdictional minimum upon remand; it is too late to do so now. *De Aguilar,* 47 F.3d at 1412 ("[l]itigants who want to prevent removal must file a binding stipulation or affidavit with their complaints; once a defendant has removed the case, *St. Paul* makes later filings irrelevant.") (quoting *In re Shell Oil Co.,* 970 F.2d 355, 356 (7th Cir.1992) (per curiam)).
>
> *Bell v. Hershey Co.*, 557 F.3d at 958.

"In determining the amount in controversy, the Court looks to the relief requested by Plaintiff in the original Complaint." *Laccinole,* at *1.  Where damages are sought, the determination of the amount in controversy is to be measured from Plaintiff's perspective. *Hacker,* at *1  Where injunctive relief is sought, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) (citations omitted). *See, e.g., Harding v. U.S. Figure Skating Association*, 851 F.Supp. 1476 (D.Or. 1994) (jurisdictional minimum met in removed action for injunction in breach of contract case; court estimated value to plaintiff, an elite figure skater, of preventing defendant from holding a disciplinary hearing which could result in her removal from the U.S. delegation to the 1994 Winter Olympics)

> Accordingly, and as well illustrated by the cases from the four corners of the federal judiciary cited in the note below, when a person seeks an injunction or other form of specific relief, such as specific performance, it is the value to the plaintiff to enjoy the property business, or personal affairs that constitute the subject of the action free from the activity sought to be enjoined or the benefit of the conduct requested to be mandated that is the yardstick for measuring whether the amount in controversy requirement has been satisfied.
>
> 14AA Federal Practice & Procedure Jurisdiction §3708 (Wright & Miller) (4th ed. 2019) (footnote omitted).

In considering whether the amount in controversy has been met, the Court may consider awards in similar cases. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *De Aguilar v. Boeing Co.,* 11 F.3d 55, 58 (5th Cir.1993); *Harding,* 851 F.Supp. at 1480.  The Court may also allow the parties to engage in limited discovery concerning the amount in controversy. *See, e.g., Liesman v. Weisberg,* 2018 WL 3242691 (W.D.N.C. 2018) (considering plaintiff's deposition in rejecting defamation plaintiff's claim that removed action did not meet $75,000 threshold). *See also Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 744, 772-773 (11th Cir. 2010) (district court

may elicit and consider post-removal evidence) and 775 (Pryor, concurring) (recognizing right to conduct discovery about jurisdiction); *Kroske,* 432 F.3d at 980.[5]

### Defendant Has Established that the Requisite Threshold Has Been Met.

In this case, Plaintiff's claim for relief is premised upon defamation.  For purposes of this analysis (but without waiving a future dispute concerning choice of law), Defendant assumes that the law of Rhode Island applies.  Under Rhode Island law, "a defamatory statement encompasses any false and malicious words 'which tends to degrade [a person] in society or bring him into public hatred and contempt.' *Elias v. Youngken,* 493 A.2d 158, 161 (R.I.1985) (internal citation omitted)."  *Chrabaszcz v. Johnston School Committee,* 474 F.Supp.2d 298 (D.R.I. 2007) (Smith, J.; alterations in original).

A defamation plaintiff is entitled to seek recovery for a wide range of injuries, including reputational injury, business losses, mental distress and damage to mental and physical health.

> [E]vidence of actual loss is not limited to, or premised on, proof of reputational harm, rather, as Rhode Island law makes clear, defamation damages may consist of mental anguish, humiliation, and other physical injury. *Bosler v. Sugarman,* 440 A.2d 129, 132 (R.I.1982) ("The award of compensatory damages ... may be based upon the mental anguish and humiliation experienced as a result of the defamatory statements.")
> *Chrabaszcz,* 474 F.Supp.2d  at 320 n.12 (other citations omitted).

Here, the allegations of the complaint, if established at trial,[6] facially support a damage award far in excess of $75,000.00.[7]  Plaintiff has alleged that, as a result of Defendant's alleged

---

[5]     "When the amount is not facially apparent from the complaint, the court may consider facts in the removal petition, and may require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.  *Singer [v. State Farm Mut. Auto. Ins. Co.],* 116 F.3d [373] at 377 [(9th Cir. 1997)] (quoting *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335–36 (5th Cir.1995))."  (Internal quotations omitted).

[6]     Defendant denies liability and does not concede that Plaintiff will be able to establish either liability or damages.

[7]     Defendant has not included a calculation for punitive damages in its analysis because Plaintiff's complaint does not specifically demand recovery for punitive damages or contain a

libel, she has been continuously harassed, subjected to death threats, and made to feel constantly in fear for her safety and that of her family.  Plaintiff has alleged that she has been injured in her business and personal enterprises on a variety of social media, on which she has thousands of followers.

Defamation claims, when successful, often support compensatory damages in the hundreds of thousands of dollars.  Reporting on "Recent Trends in Damages Awards—A Statistical Summary" in Law of Defamation, the treatise author observed that "[t]he growing visibility of libel and other media-related litigation has generated a substantial amount of new statistical data concerning such suits."  2 Smolla, Law of Defamation §9:106 (2d ed. 2019).  In canvassing a series of studies of defamation litigation from the 1970s and 1980s, the author reported that studies in 1982 and 1984 reflected that the *average* compensatory damage award was over $2,000,000.[8]  *See also Sindi v. El-Moslimany*, 896 F.3d 1, 21 (1st Cir. 2018) (affirming separate defamation awards of $400,000 and $100,000 against two defendants based in part on social media posts and platforms); *Armstrong v. Shirvell,* 596 Fed. Appx. 433, 440 n.2 (6th Cir. 2015), *cert. denied,* 136 S.Ct. 403 (2015) (affirming jury verdict which included $750,000.00 compensatory damages for defamation based in part on social media postings).

---

description of the alleged conduct by the Defendant which would support a claim for punitive damages under *Palmisano v. Toth,* 624 A.2d 314 (R.I. 1993).  Because no claim or associated language appears in the complaint, the stipulation of her attorney can fairly be read to confirm that Plaintiff did not include a claim for punitive damages in her complaint and has stipulated that she is bound never to seek such relief.

[8]      "Whatever solace defendants may take in the ultimate statistical success rates of libel suits, the *size* of damages awards remains intimidating. In the 1982 LDRC study, the average initial damages award was $2,051,178.20, and the average punitive damages award was $2,520,901.60. In the 1984 study, the figures were $2,033,367.00 and $2,980,093.70."  *Id.* (emphasis in original; footnotes omitted).

Accordingly, Defendant submits that the jurisdictional minimum has been established. And, as discussed above, the post-removal "stipulation" of Plaintiff's attorney purporting to reset the amount in controversy as limited to $75,000.00 is legally insufficient to defeat removal. *St. Paul Mercury Indemnity Co. v. Red Cab Co. supra; Bell v. Hershey Co.*, *supra*.

But there is more. Plaintiff's complaint also seeks permanent injunctive relief.

Plaintiff's bald assertion that no monetary value can attach to achieving a complete eradication in perpetuity of any adverse (or, indeed, any) comment about her by Defendant or on any media platform maintained by Defendant is, respectfully, ridiculous.[9] While the exact or total value to Plaintiff of having all adverse commentary and publicity by Defendant removed and of obtaining a judicially-enforceable order preventing Defendant from ever criticizing or satirizing her again may be difficult to fix, it is certainly not $0.00. Indeed, one of the requirements for issuance of injunctive relief is that the proponent does not have an "adequate remedy at law"— meaning that post-injury damages alone will not fairly or adequately compensate for the injury.

In *Raymond v. Lane Construction Corp.,* 527 F.Supp. 2d 156 (D.Me. 2007), plaintiff, anticipating the possibility of removal based on diversity, included a statement in her state court complaint that the amount in controversy did not exceed $75,000.00. On motion to remand, plaintiff submitted an affidavit from her attorney representing that she was not seeking damages in excess of $72,218.00 and that her recoverable attorneys' fees to date was $2782.00 as of the date of removal. The district court denied remand, finding additional value in the attorneys-fee element of the claims asserted by the plaintiff in her state court complaint. The court observed that plaintiff in her argument for remand "has drawn her request too close to the jurisdictional line.

---

[9]    Plaintiff in her supporting Memorandum ignores the extraordinary value of the injunctive relief to her and instead claims that the focus should be the cost to the Defendant of lost advertising or "click" revenue. (ECF 13-1 at 5)

She has stipulated that her claim…totals precisely $75,000.  Given that even one extra dollar of attorney's fees would place her over the $75,000 threshold, it is a 'legal certainty' that her amount in controversy will meet the statutory requirement."  527 F.Supp. 2d at 163-164.

Here, Plaintiff has pegged the value of her recoverable claim for defamation damages as precisely $75,000.00, meaning that, even if one accepts this *post hoc* damage cap, any additional amount of value for the injunction that she seeks will place the amount in controversy over the jurisdictional minimum, as in *Raymond v. Lane, supra*.  Plaintiff's claim for injunctive relief has independent value that can be quantified, even if not precisely determined, and is substantially more than $0.00—the absolute maximum number upon which Plaintiff must rely to succeed on her argument that the amount in controversy does not exceed $75,000.00.

As one example of valuation, the Court may take judicial notice that the pervasiveness of information on social media platforms, both positive and negative, has produced an entire industry devoted to burnishing or repairing the internet/social media presence of a person or business (or both).[10]  Even the most superficial "Google search" of "cost of repairing damaged internet reputation"[11] produces voluminous relevant results, including articles about and advertisements for companies offering services to remove negative online content and repair an online reputation and to monitor results.[12]  These services thus can fairly be valued in the thousands of dollars and,

---

[10]    Defendant respectfully submits that this Court can take judicial notice of this information. See Fed.R.Evid. 201. *See also O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1224 (10th Cir. 2007) ("[i]t is not uncommon for courts to take judicial notice of factual information found on the world wide web"); G. Joseph, "Judicial Notice of Internet Evidence," U.S. Law Week, Vol. 82, No. 34 (March 11, 2014).

[11]    For example:
https://www.google.com/search?q=cost+of+repairing+damaged+internet+reputation&rlz=1C1GCEA_enUS798US798&oq=cost+of+repairing+damaged+internet+reputation&aqs=chrome..69i57j33.15239j1j4&sourceid=chrome&ie=UTF-8

[12]    Some companies provide a monthly fee-based service, while others charge a flat fee.  One online reviewer at FitSmallBusiness.com reported that "Pricing for similar providers usually costs

in all events, for a party seeking relief from a destroyed or damaged internet identity, would be valued far in excess of $0.00.

## Conclusion

Defendant submits that it has demonstrated, by a fair preponderance of the evidence, that the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and therefore satisfies diversity jurisdiction under 28 U.S.C. §1332.  Accordingly, Defendant respectfully prays that the Motion to Remand be denied in all respects, or, in the alternative, that the Court afford the Defendant the opportunity to conduct limited discovery concerning the amount in controversy before resolving the Motion.

Defendant,
By its attorney,

 /s/ Lynette Labinger
Lynette Labinger #1645
128 Dorrance Street, Box 710
Providence, RI 02903
401-465-9565
ll@labingerlaw.com
Cooperating counsel,
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF RHODE ISLAND

---

around $15 to $329 per month, while those with more extensive features can cost $3,999 to $7,500 or more per month."  "2019 Reputation.com Reviews, Pricing & Popular Alternatives" by S. Paraan on 3/13/19.
https://fitsmallbusiness.com/reputation-com-reviews-pricing/ (accessed 10/2/19)

## **CERTIFICATION**

I hereby certify that on October 4, 2019, a true copy of this document was delivered electronically using the CM/ECF system to all counsel of record.

_/s/ Lynette Labinger_____
Lynette Labinger      #1645

12